THE PORTO RICO COAL COMPANY and THE PORTO RICO LIGHTERAGE COMPANY, Petitioners, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, Respondent.

No. C-64-3.     Decided October 23, 1964.

*Hartzell, Fernández & Novas* and *Héctor M. Laffitte* for petitioners. *Vicente Géigel Polanco* and *Vicente Géigel Lanuza* for intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The complaint filed against petitioners covers two periods of time to which two different legal provisions are applicable. The first period covers from January 1, 1950 to June 26, 1956 and it is allegedly covered by Mandatory Decree No. 12 of the Minimum Wage Board of Puerto Rico; the second period covers from June 26, 1956 to August 31, 1961 and it is allegedly covered by § 37-R of Act No. 96 of June 26,

1956 (Sess. Laws, p. 720)—29 L.P.R.A. § 246i—Cum. Supp. 1963 (p. 172)—and § 6(f) added to said Act No. 96 by § 1 of Act No. 103 of June 25, 1958 (Sess. Laws, p. 241)— 29 L.P.R.A. § 245(e) Cum. Supp. 1963 (p. 147).

The trial court reached the conclusion that the application of Mandatory Decree No. 12 for the first period in the complaint was evident since it was satisfactorily proved that the workers rendered services as seamen in the freight transportation service between San Juan and other ports of Puerto Rico, between San Juan and the Virgin Islands, and between San Juan and New York, as well as in the lighterage, transfer, or steering of the ships going in and out of San Juan Port. The service rendered is evidently transportation service, that is, moving, transferring or carrying machinery and other goods from one port to another and towing, transferring, or steering ships entering and leaving the port of San Juan. This transportation service has been rendered by means of tugboats, which are motor vehicles.

On appeal petitioners allege that Mandatory Decree No. 12 is not applicable to maritime transportation because in the description of the tasks involved and in the determination of its wages the decree only specifies classifications and wages generally applied to works in relation to railroads, trucks, and public and private service cars, and it could not have been the intention of the Minimum Wage Board, in such a vital phase of transportation as maritime transportation, to leave the application of the decree to maritime transportation subject to the risk of a mere implication of incidental task; that it was on June 26, 1956, date on which the new Minimum Wage Act became effective, that the shipping industry was defined and established for the first time.

The former Mandatory Decree No. 12 of 1946 originally read: "The 'Transportation Service' shall comprise, but not as a limitation, every act, process, operation, work or serv-

ice that is necessary or incidental or is related to the transportation of persons or things from one place to another by or in any kind of motor vehicle including those that run by rails." In the classification of the wages the following are included: skilled, semi-skilled and unskilled railroad employees or workers; chauffeurs of trailers and semi-trailers, of trucks, of omnibuses; of public service automobiles including taxis; of private service automobiles; employees and skilled workers (except chauffeurs), semi-skilled, and unskilled workers of any other motor vehicles.

Section 6(f) of the Minimum Wage Act of Puerto Rico of 1956, added by Act No. 103 of June 25, 1958 provides that: "Every employer in the Shipping Industry, as defined in section 37 hereof, shall pay a wage not lower than one (1) dollar per hour, when the work or service is covered by the Fair Labor Standards Act of 1938, as amended." Section 37R of the Minimum Wage Act of Puerto Rico of 1956 defines said activity as follows: "Shipping Industry: shall comprise the transportation of passengers and cargo by water and all activities in connection therewith, including but not by way of limitation, the operations of common, contract, or private carriers; stevedoring (including stevedoring by independent contractors); and storage and lighterage operations."

The importance of determining the applicability of Mandatory Decree No. 12 to workers who, as in this case, are seamen is, that this being an industry covered by the Federal Fair Labor Standards Act, the controlling factor for fixing the amount of compensation is the applicability, in turn, of the last exception of the *Provided* clause of § 5 of Act No. 379 of May 15, 1948. Said § 5 provides: "Every employer who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a wage rate equal to double the rate agreed upon for regular hours; *Provided, however,* That every employer in

any industry in Puerto Rico covered by the provisions of the Fair Labor Standards Act enacted by the Congress of the United States of America on June 25, 1938, as heretofore or hereafter amended, shall be under obligation to pay only for each hour of work in excess of the legal eight-hour working day, or in excess of forty (40) hours a week, a wage at the rate of not less than time and a half the rate of wage agreed upon for regular hours, *save when by a decree of the Minimum Wage Board or by a collective labor agreement, other working and/or compensation standard is heretofore or hereafter fixed.*" (Italics ours.)

■ The *Provided* clause of § 5 included above may be considered as our local law applicable to industries subject to Federal Fair Labor Standards Act. In the case of *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250, 273 and 275 (Snyder) (1948) upon analyzing the content of § 18 of the Fair Labor Standards Act, we reached the conclusion that by virtue of said § 18 Congress expressly permitted local minimum wage and maximum workweek statutes to subsist if they provided for higher standards than those found in the Federal Act. We held: "By enacting § 18 Congress made it clear that it was not preempting the field of standards relating to wages and hours in interstate commerce. It gave the States freedom of action to establish higher standards than those contained in the Federal Act. State legislation is superseded by the Fair Labor Standards Act only if the local statute provides lower standards than the Federal Act." So that the only precaution we must take in determining which of the two acts prevails in a particular state of facts, is to decide which is more beneficial to the worker: *Laborde* v. *Eastern Sugar Associates*, 81 P.R.R. 468, 472 and 478 (Belaval) (1959).

■ Although it is true that the *Provided* clause of § 5 endeavors to write into our local law the federal formula for overtime pay at the rate of time and a half insofar as

the latter is applicable to industries subject to the Federal Fair Labor Standards Act: *Olazagasti* v. *Eastern Sugar Associates*, 79 P.R.R. 88, 102 (Marrero) (1956); *Berríos* v. *Eastern Sugar Associates*, 79 P.R.R. 647, 657 (Marrero) (1956) it is nonetheless true that there exist two exceptions in which the local formula and not the federal formula is applicable for overtime pay at double rate, the exceptions being: (1) when the wages corresponding to the industry have been fixed by decree of the Minimum Wage Board of Puerto Rico, and (2) when the wages have been agreed upon by the parties by virtue of a collective bargaining agreement. In said two exceptions the local law would always prevail because no decree of the Board or collective bargaining agreement may establish lower minimum wages or a longer working day than those fixed by the laws of Puerto Rico: § 21 of Act No. 96 of June 26, 1956, on minimum wages—29 L.P.R.A. § 245t, Cum. Supp. 1963, (at p. 161)— and § 6 of Act No. 379 of May 15, 1948 to establish the working day in Puerto Rico—29 L.P.R.A. § 275 (p. 471).

■■ Since the claim in the complaint for extra hours of work is made by a group of workers in an industry covered by the Federal Fair Labor Standards Act, classified as seamen, and as such exempted from application of the federal law, it is proper to make clear that, whether we are dealing with the federal exemption of one phase of the aforesaid industry—assumption of § 7(c), *Laborde* v. *Eastern Sugar Associates, supra* at 472—or with a group of workers or employees specifically exempted—assumption of § 13, paragraph 14; *Ortiz* v. *Eastern Sugar Associates*, 85 P.R.R. 90, 93 (Per Curiam) (1962); *Pan American* v. *Superior Court*, 86 P.R.R. 132, 143 (Blanco Lugo) (1962), the *Provided* clause of § 5 would always be applicable to jobs or workers exempted, since it is unquestionable that in the face of an exemption of the Fair Labor Standards Act, which renders

ineffective the remedial effects of a wage and hour statute, it is more beneficial for the worker or employee to be included in the local statute, which completely preserves said remedial effects. In the case of workers or employees exempted by the Federal Act, by virtue of the *Provided* clause of § 5 of Act No. 379, they shall be entitled to compensation at the rate of time and a half for each extra hour of work pursuant to the federal formula, and if the industry is already covered by a decree of the Minimum Wage Board or by a collective bargaining agreement, they shall be entitled to receive double compensation for each extra hour of work, pursuant to the local formula.

■ The trial court ordered that compensation be paid to the seamen included in the complaint filed against petitioners, for the extra hours worked at the double rate, because it understood, as to the first period, that said seamen were covered by Mandatory Decree No. 12.

■■ Limiting our judgment strictly to the issue, we hold that Decree No. 12 of 1946 was not applicable to the seamen contracted by the petitioners because their job did not correspond to the tasks expressly or impliedly included in Mandatory Decree No. 12, all related to the land transportation, criterion which is strengthened when considering that the Minimum Wage Act of Puerto Rico—Act No. 96 of June 26, 1956 as added by Act No. 103 of June 25, 1958 —considered the "shipping industry" as something directly related to the conveyance of passengers and cargo by *sea*, including the traditional maritime operations of stevedoring, storage and lighterage, and thus different from transportation of freight *by land* described in Mandatory Decree No. 38 of January 19, 1958, which modified Mandatory Decree No. 12 of 1946. It is well known that the most reliable test for determining the applicability of a decree to a particular industry is by establishing the relationship of the principal

92

tasks specified in the decree with the more outstanding and extensive tasks performed by the employer. As to the incidental tasks it suffices to say that they are those comprised in the principal tasks, absorbed by the latter in the process that characterizes the industry, that is, insufficient by themselves to constitute a principal task by which the industry may be classified. Ex.: The incidental task of a shift inspector in a passenger transportation business.

■ As Mandatory Decree No. 12 was not applicable to the seamen during the first period in the complaint, it is evident that they are only entitled to pay at the rate of time and a half for any overtime pursuant to the *Provided* clause of § 5.

As to the second period in the complaint the trial court reached the conclusion that "starting June 26, 1956 the *shipping industry* has been established and recognized in Puerto Rico as a local industry subject to the provisions of the Minimum Wage Act of Puerto Rico and the other protective labor statutes in force in this jurisdiction, among them, Act No. 379, approved May 15, 1948, establishing the working day in Puerto Rico and providing for the payment of double time for hours worked in excess of the legal working day, etc. Act No. 379 of 1948 provides in § 2 that 'eight hours of work constitute the legal working day in Puerto Rico'; § 4 defines extra hours of work, 'the hours that an employee works for his employer in excess of eight hours during any period of twenty-four consecutive hours'; and § 5 provides that "every employer who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a *wage rate equal* to double the rate agreed upon for regular hours.' Section 5 of said Act No. 379 has a *Provided* clause applicable to every employer of any industry in Puerto Rico covered by the provisions of the Fair Labor Standards Act, providing for the payment of extra hours at time and a half rate. Said *Provided* clause is not

applicable to the Shipping Industry which employs seamen, for the reason stated that the Fair Labor Standards Act itself excludes seamen from the benefits of the federal statutes as to wages and working hours. So that the ninth consecutive hour of work during which petitioners rendered service from June 26, 1956 to August 31, 1961, which period is covered by the definition of the *shipping industry* contained in § 37R of the new Minimum Wage Act of 1956, should be paid at double rate as provided in the first paragraph of § 5 of Act No. 379 of 1948."

Petitioners allege that the *Provided* clause of § 5 only safeguards those cases in which, by mandatory decree of the Minimum Wage Board or by agreement, another standard is fixed to compensate extra hours, and § 6(b) of the Minimum Wage Act is neither a decree nor an agreement; because if the reasoning of the interveners is accepted, the result would be that § 6 of the Minimum Wage Act would have amended § 5 of Act No. 379 of 1948, since all the industries mentioned in § 6 would have to pay the hours worked in excess of 8 daily and 40 weekly at double rate, irrespective of whether they are engaged in interstate commerce; and if that had been the intent of the Legislature of Puerto Rico, it only needed to repeal the *"Provided"* clause of § 5 of Act No. 379.

On the contrary, appellees allege that to provide in § 6(f) of the Minimum Wage Act of Puerto Rico a minimum wage of one (1) dollar per hour for the shipping industry is tantamount, in its legal meaning and for regulation purposes of said industry as to wages, to any ruling the Minimum Wage Board might make for other industries in Puerto Rico, with the peculiar circumstance that in this case it is the Legislative Assembly of Puerto Rico itself, creator of the Minimum Wage Board, the one that determines the minimum wage to be paid in the shipping industry; and another logical inference from the legal status is that the

*Provided* clause of § 5 of Act No. 379 of May 15, 1948 in providing that the industries covered by the Fair Labor Standards Act shall only pay for hours worked in excess of 8 hours a day or 40 a week a wage rate not less than time and a half, save when by a *decree* of the Minimum Wage Board or by collective bargaining agreement, other working or compensation standards are fixed, or both, renders imperative the interpretation that the saving clause relating to the fixing by decree of the Minimum Wage Board a different working or compensation standard, should also include the determination made by the Legislative Assembly itself for a particular industry, fixing the minimum compensation to be paid, as in the case of the shipping industry, or in other words, that the legislative determination of minimum wages for said industry is equivalent to a governmental decree of identical validity and legal scope as a decree of the Minimum Wage Board.

It is unquestionable that the exemption of the industry by the Fair Labor Standards Act plays no role in this case. As we have seen, the only consequence a federal exemption has is to leave the field open to local legislation, because the local inclusion is more beneficial than the federal exclusion. No matter how the *Provided* clause of § 5 of Act No. 379 of May 15, 1948 should be applied, in a situation like the present case, it performs the function of a local law. Then the payment for each hour of work in excess of the legal working day of eight (8) hours, or in excess of the forty (40) hours a week shall be at the rate of, at least, time and a half the rate of wage agreed upon for regular hours, "save when by a decree of the Minimum Wage Board or by a collective agreement, other working [hours] and/or compensation [wages] standard is heretofore or hereafter fixed, or both [hours and wages]." Notice that the decree of the Board or the collective agreement may regulate exclusively the hours of work or the wages, or both.

■ In reality of law the only question for decision in this case is whether the fact that the Legislature of Puerto Rico fixed the wage rate alters the situation covered by the last exception of the *Provided* clause of § 5. Since the standard was established by the same authority which creates the Minimum Wage Board, it is as compulsory as a decree of said Board and according to the context of § 5 itself which permits the fixing of working (hours) or compensation (wages) standards, the case is not unusual or its construction constrained. In this case the working hours are those established by the *Provided* clause of § 5 which is our local law for industries covered by the Federal Fair Labor Standards Act, and the minimum wage the one established by the Legislature of Puerto Rico, in § 6(f) added to the Minimum Wage Act of Puerto Rico by Act No. 103 of June 25, 1958, that is, at the rate of $1.00 per hour of work, and the extra hours should be paid as if it were an industry covered by a decree, that is, at the double rate.

For the aforestated reasons the judgment of November 22, 1963 of the Superior Court of Puerto Rico, San Juan Part, will be reversed as to the period allegedly covered by Mandatory Decree No. 12 and it will be modified as to the period allegedly covered by the Minimum Wage Act of Puerto Rico, pursuant to the pronouncements in this opinion.